# IN THE COURT OF APPEALS OF IOWA

No. 23-0889
Filed August 30, 2023

**IN THE INTEREST OF N.R.,**
**Minor Child,**

**J.R., Mother,**
    Appellant,

**A.B., Father,**
    Appellant.

_____

Appeal from the Iowa District Court for Linn County, Cynthia S. Finley, District Associate Judge.

A mother and father separately appeal the termination of their parental rights. **MOTHER'S APPEAL DISMISSED; AFFIRMED ON FATHER'S APPEAL.**

Robert W. Davison, Cedar Rapids, for appellant mother.

Melody J. Butz of Butz Law Offices, PC, Center Point, for appellant father.

Brenna Bird, Attorney General, and Tamara Knight, Assistant Attorney General, for appellee State.

Kimberly Opatz of Linn County Advocate, Cedar Rapids, attorney and guardian ad litem for minor child.

Considered by Tabor, P.J., Buller, J., and Vogel, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2023).

**VOGEL, Senior Judge.**

The mother and father separately appeal the termination of their parental rights to N.R., born in 2020. The family came to the attention of the Iowa Department of Health and Human Services (HHS) in April 2022 when, due to the mother's recent arrest and the father's ongoing incarceration, no one was available to care for the child. The child was soon adjudicated as being in need of assistance and removed from the parents' custody. After HHS offered several months of services, the State filed the petition to terminate parental rights in January 2023. The matter proceeded to a termination trial in May, after which the juvenile court terminated the rights of both parents. The mother and father separately appeal. We review the termination of parental rights de novo. *In re W.T.*, 967 N.W.2d 315, 322 (Iowa 2021).

## I. The Mother's Appeal

Before we can consider the merits of the mother's appeal, we must decide if we have jurisdiction to hear it. On May 22, 2023, the juvenile court issued the termination order. On June 2, the mother timely filed her notice of appeal. On June 23, the supreme court entered an order explaining the mother's petition was due June 19[1] and ordering her to file a statement explaining why the appeal should not be dismissed. The mother filed her petition later that day. On June 24, the mother, through her attorney, filed a response asking the court to accept a delayed appeal and asserting: her attorney intended to file the petition at the same time he filed the notice of appeal; "through inadvertence, [her attorney] did not file the brief

---

[1] See Iowa R. App. P. 6.201(1)(b).

that day thinking he had done so"; and her attorney "immediately filed" the petition upon being notified he had not done so. The supreme court transferred the delayed-appeal issue to our court to be decided with the appeal.

"[A] delayed appeal is allowed 'only where the parent clearly intended to appeal,' the 'failure to timely perfect the appeal was outside of the parent's control,' and the delay was 'no more than negligible.'" *W.T.*, 967 N.W.2d at 322 (quoting *In re A.B.*, 957 N.W.2d 280, 292 (Iowa 2021)). We accept the statements of the mother's attorney and find the first two factors satisfied. *See id.* The question becomes whether the mother's five-day delay in filing her petition is "no more than negligible." *Id.* (citation omitted).

Since the supreme court set out the delayed-appeal factors in *A.B.*, 957 N.W.2d at 293, we have not accepted a delayed appeal more than three days late.[2] *See In re B.W.*, No. 21-1810, 2022 WL 468945, at *3 (Iowa Ct. App. Feb. 16, 2022) ("Given the expedited nature of child-welfare appeals, three days may be pushing the limit of what can be considered negligible."); *see also In re K.P.*, No. 21-1809, 2022 WL 468943, at *2 (Iowa Ct. App. Feb. 16, 2022) ("While we do not reach the third factor . . . we are skeptical that a four-day delay would be considered no more than negligible."). Here, the mother filed her petition five days late. *See* Iowa R.

---

[2] As with the mother here, *A.B.* involved a timely notice of appeal but a late petition. *See* 957 N.W.2d at 289. Since then, we note most requests for a delayed appeal have involved a late notice of appeal. *See W.T.*, 967 N.W.2d at 318; *In re W.M.*, 957 N.W.2d 305, 316 (Iowa 2021); *B.W.*, 2022 WL 468945, at *2–3; *K.P.*, 2022 WL 468943, at *1–2. Nevertheless, we apply the same three-factor test and find our delayed-appeal precedents instructive for all parental-rights cases, regardless of whether the notice of appeal was delinquent or only the petition. *See W.M.*, 957 N.W.2d at 316 ("We do not find the distinction between a late notice of appeal and a late petition on appeal material to whether a delayed appeal should be considered.").

App. P. 6.201(1)(b) (requiring the petition for a termination-of-parental-rights appeal to be filed "within 15 days after the filing of the notice of appeal"). We accept the mother's attorney's explanation of the delayed filing of the petition, and that his inadvertence was outside of the mother's control. Nevertheless, our supreme court has instructed us that the reason counsel failed to timely file "is irrelevant." *W.T.*, 967 N.W.2d at 322. Relying on our precedent, we find the mother's five-day delay in filing her petition is more than negligible, and we dismiss her appeal. *See id.*

We are also mindful that a delinquent filing "caused by counsel's negligence [raises] additional concerns about whether the attorney rendered ineffective assistance." *Id.* at 320. While the mother does not raise an ineffective-assistance-of-counsel claim, our de novo review of the record convinces us we would affirm termination of the mother's parental rights if we were to reach the merits of her appeal. She has not adequately addressed her mental-health and substance-abuse issues; she concealed important information from HHS throughout the proceeding; and her recent progress is too little, too late.

## II. The Father's Appeal

The father argues the State failed to provide him with reasonable efforts toward reunification. "The State must show reasonable efforts as a part of its ultimate proof the child cannot be safely returned to the care of a parent." *In re C.B.*, 611 N.W.2d 489, 493 (Iowa 2000). The parent must object to services "early in the process so appropriate changes can be made." *Id.* at 493–94. "In general, if a parent fails to request other services at the proper time, the parent waives the

issue and may not later challenge it at the termination proceeding." *In re C.H.*, 652 N.W.2d 144, 148 (Iowa 2002).

On appeal, the father argues the State should have provided him with visitation in prison. However, the only additional service the father requested before the termination trial was participation in a reading program. Even during the termination trial, the father acknowledged the State "made some kind of efforts" toward reunification and all he wanted was "a little more time." Because the father did not timely request visitation, his challenge to the lack of visitation is not preserved for our review. *See C.H.*, 652 N.W.2d at 148.

Next, the father argues termination of his parental rights is not in the child's best interests. *See* Iowa Code § 232.116(2) (2023). The father is currently serving his third separate prison sentence since 2010. Most recently, he was imprisoned before the child was born, and he is not scheduled for release until 2027, though he is confident he will qualify for early release before then. To his credit, the father has participated in several life-skills programs while incarcerated. However, he has never met the child, and his contact with the child and the foster family has been limited to phone calls. Considering the father's significant history of incarceration, his minimal relationship with the child, an absence of any demonstrated parenting ability, and uncertainty over when he will be released from prison, we agree termination is in the child's best interests. *See In re L.L.*, 459 N.W.2d 489, 495 (Iowa 1990) ("Children simply cannot wait for responsible parenting.").

The father also asserts that, because he is African-American and N.R. is bi-racial, termination would inappropriately separate the child from "family who share

his ethnicity and ethnic traditions."  However, HHS's efforts to find a permanent placement for the child are not before us in this appeal.  We also note the child is placed with a half-sibling and the foster parents are willing to adopt, which would preserve a family connection for the child.  To the extent the father requests an additional six months for reunification, he acknowledges he would not be in a position to take custody of the child within six months even if he obtains early release as soon as he hopes.  *See W.T.*, 967 N.W.2d at 323 ("[T]he juvenile court may deny termination and give the parent an additional six months for reunification only if the need for removal 'will no longer exist at the end of the additional six-month period.'" (quoting Iowa Code § 232.104(2)(b))).

**MOTHER'S APPEAL DISMISSED; AFFIRMED ON FATHER'S APPEAL.**